UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DR. TIMOTHY A. KNIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case Number: 22-2150 |
| ) | |
| JAMES BRAINARD, in his Official ) | |
| Capacity as Mayor of the CITY OF CARMEL,) | |
| LISA HARTZ, and JAMES CRIDER, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, by counsel, Terrance Kinnard, for his Complaint and Demand for Jury Trial, states the following:

## PRELIMINARY STATEMENT

1. This suit is brought for discrimination in employment pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17.

## PARTIES

2. Plaintiff Timothy A. Knight, Ph.D. ("Dr. Knight") is a African American, natural person who resides in Marion County, Indiana.

3. Defendant James Brainard ("Mayor Brainard") is the duly elected Mayor of the City of Carmel, Indiana.

4. The City of Carmel is a suburban city in Indiana, incorporated as such in 1874.

5. Defendant Lisa Hartz ("Ms. Hartz") is a natural person, who is employed by the City of Carmel as its Human Resources Manager.

6. Defendant James Crider ("Mr. Crider") is employed by the City of Carmel as its Director of Administration.

## JURISDICTION AND VENUE

7. The Plaintiff herein invokes the Court's federal question jurisdiction, pursuant to 28 U.S.C. § 1331 and 1343 and 42 U.S.C. § 2000e-5(f), to obtain a judgment for damages suffered and sustained by the Plaintiff and caused by the Defendants' violation of the Plaintiff's rights, privileges, and immunities, as guaranteed by applicable federal statutes, specifically 42 U.S.C. §§ 2000e – 2000e-17, for the costs of suit, including reasonable attorney's fees.

8. Venue in the Indianapolis Division of the Southern District of Indiana is appropriate pursuant to 28 U.S.C. § 1391(b), as a substantial portion of the events which give rise to this action took place within this District.

## FACTUAL ALLEGATIONS

9. The City of Carmel is a community of approximately 100,000 residents.

10. Carmel's racial composition consists of 81.9% white and only 2.6 % African American residents.

11. The City of Carmel's staff is at least 89% Caucasian, 4.25% are non-white, while 6.73% of the staff chose not to self-identify, according to the City's voluntary self-identification data on race and ethnicity of employees.

12. Carmel has a long, deep-rooted history of documented disparate treatment of African American citizens.

13. Although Carmel's history of racism has largely manifested through disparate treatment of African Americans during police encounters, disparate treatment of city employees is well documented.

14. Prior to bringing this litigation, Dr. Knight presented his claims to the Equal Opportunity Employment Commission.

15. Dr. Knight received a Determination and Notice of Rights letter ("Right to Sue"), dated September 16, 2022.

16. This lawsuit is brought within 90 days of the receipt of the Right to Sue.

17. In an apparent attempt to create at least the appearance of remedying its historic culture of racial discrimination, Carmel created its first ever position of Equity Manager and thereafter advertised an opening for this position.

18. Dr. Knight viewed and applied for the advertised opening on October 28, 2020.

19. Dr. Knight learned of the opening through the web platform "LinkedIn."

20. At the time of his application, Dr. Knight brought many qualifications to the position.

21. Specifically, Dr. Knight:

   a. holds a Ph.D. in Human Services with a specialization in social and community services.

   b. served several years as a sworn police officer, supervisor, and detective with the Indianapolis Metropolitan Police Department; and

   c. maintains vast experience in employment and business development.

22. Dr. Knight interviewed for the position over the telephone on April 8, 2021.

23. Prior to Dr. Knight's official start date, Ms. Lamb on April 8, 2021 informed Dr. Knight that a culture of anti-African American racial discrimination exists within the rank and file of the City of Carmel, and emphasized the need for diversity, equity, and inclusion training.

24. Dr. Knight's final interview was held May 7, 2021 with the entire human resources team as well as the elected City Clerk, Susan Wolfgang.

25. The telephone interview was followed up by an in-person interview, which was

conducted by Susan Wolfgang (the elected City Clerk) and the entire human resources team.

26. A committee of employees of the City of Carmel on May 7, 2021 voted to hire Dr. Knight.

27. Dr. Knight's official start date was May 17, 2021; however, Human Resources Director Barbara Lamb ("Ms. Lamb") invited Dr. Knight to a diversity, equity, and inclusion event on May 13, 2021.

28. On July 8, 2021, Ms. Lamb added to Dr. Knight's duties the work of professional coaching and leadership development.

29. On August 31, 2021, certain Carmel employees began resisting the idea of an African American (Dr. Knight) conducting city-wide diversity training.

30. Specifically, the manger of Carmel's water operations (Greg Hollander) refused to allow Dr. Knight to conduct such training at his facility.

31. Ultimately, Ms. Lamb agreed and insisted that Dr. Knight suspend all in-person diversity training and forbid Dr. Knight from conducting virtual training until her departure following retirement.

32. Discrimination from additional city departments followed quickly thereafter, and Ms. Lamb also suspended Dr. Knight's training for the fire department.

33. The truth is the heads of various city departments, in concert with human resource professionals and staff, simply did not want an African American providing training on racial diversity.

34. This discriminatory action essentially prevented Dr. Knight from performing the principle work for which he was hired, and which Carmel so desperately needed.

35. On September 22, 2021, Ms. Lamb invited two (2) Caucasian employees (Jim

Spelbring and Linda Traverson) into her office.

36. Dr. Knight could hear loud outbursts of laughter and joking emitting from the office.

37. Shortly thereafter, Ms. Lamb informed Dr. Knight that the only other African American employee in the office (Michele Leaks) resigned.

38. In the days following Ms. Leaks resignation, Ms. Lamb changed the job titles of Jim Spelbring and Linda Traverson and gave them immediate substantial raises.

39. On October 28, 2021, Ms. Lamb invited Dr. Knight to apply for the City's Director of Human Resources position, which Ms. Lamb was vacating effective December 31, 2021.

40. After word spread of Dr. Knight's pending interview for this position, Ms. Lamb came under pressure to exclude Dr. Knight based on his race.

41. On November 4, 2021, prior to Dr. Knight's scheduled interview for the Director of Human Resources position, Ms. Lamb shockingly confronted Dr. Knight with concerns that he had not completed any in-person diversity training.

42. Dr. Knight quickly reminded Ms. Lamb that he did not complete such training because she ordered him to suspend the very work for which he was hired.

43. On November 10, 2021, Ms. Lamb and Jim Spelbring interviewed Dr. Knight for the position of Director of Human Resources.

44. On November 16, 2021, Ms. Lamb informed Dr. Knight that she advanced Lisa Hartz's name to the mayor to serve as her replacement as the Director.

45. Ms. Lamb informed Dr. Knight that his DEI and leadership work took priority over his bid to become Director of Human Resources.

46. Ms. Lamb seemed to justify this decision further based on Dr. Knight's failure to perform the diversity training she ordered suspended.

47. Ms. Lamb made this recommendation despite the fact Ms. Hartz was far less qualified for the position.

48. The truth is that Dr. Knight was denied this promotion because the City of Carmel did not wish for an African American to hold such a high-level position within the city administration.

49. On January 4, 2022, while at work in the City's administrative offices, Jim Spelbring started yelling, screaming, and using profanity to criticize the city administration.

50. Mr. Spelbring's outburst included throwing items around the room.

51. Mr. Spelbring was not disciplined for his behavior.

52. Later in the day on January 4, 2022, Ms. Lamb (who continued to work for the City past her scheduled retirement date) lodged several disrespectful comments toward Dr. Knight, referring to him as "stupid," "crazy," Pollyanna," and asking "what planet" from which Dr. Knight came.

53. Ms. Hartz on January 27, 2022 – in her newly found position as Director of Human Resources – met with her team for the first time since starting this position.

54. Ms. Hartz informed the team, including Dr. Knight, that she required honesty, even if the team members had to scream and yell at each other, she would not be offended.

55. Dr. Knight was the only African American employee present among a vast population of Caucasian employees.

56. Dr. Knight on March 2, 2022 engaged in an email exchange with Ms. Hartz in which Dr. Knight sought clarity about his role and authority to execute his duties.

57. On March 10, 2021, at approximately 8:00 a.m., Ms. Hartz and Mr. Crider terminated Dr. Knight's employment with the City of Carmel.

58. During this termination meeting, Ms. Hartz was angry and intolerant when explaining

Dr. Knight was being terminated for insubordination.

59. Ms. Hartz was ambiguous in describing when and how Dr. Knight was insubordinate and offered no documentation.

60. Dr. Knight thereafter applied for unemployment benefits, and Carmel quickly objected to the same.

61. On July 27, 2022, Carmel legal counsel, Ms. Hartz, and other Carmel employees attended the hearing and now alleged that Dr. Knight made "sexually explicit conversations" with them.

62. The female witnesses also testified on the recorded hearing to informing various friends to be aware if anything happened to them that Dr. Knight was responsible.

### FIRST CAUSE OF ACTION
### Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

63. The Plaintiff incorporates paragraphs 1 – 62 herein as if fully rewritten.

64. The Defendants' conduct, as alleged at length herein, constitutes discrimination based on race in violation of Title VII.

65. The states reasons for Defendants' conduct were not the true reasons, but instead were pretextual to conceal the Defendants' animus.

66. The unlawful employment practices include, without limitation, disparate treatment, unwarranted discipline, and discharge because of Dr. Knight's race.

67. The effect of these practices deprived Dr. Knight of equal employment opportunities, opportunity for advancement, and otherwise adversely affected his employment status because of his race.

68. These unlawful employment practices were intentional.

69. The unlawful employment practices were undertaken with malice or with reckless

indifference to Dr. Knight's federally protected rights.

## SECOND CAUSE OF ACTION
### Discriminatory Treatment Because of Race in Violation of Section 1981

70. The Plaintiff incorporates paragraphs 1 – 62 herein as if fully rewritten.

71. During Dr. Knight's employment, the Defendants engaged in unlawful discriminatory employment practices by discriminating against him with respect to the terms and conditions thereof.

72. The unlawful employment practices include, without limitation, disparate treatment, discipline, harassment, and false accusations all because of Dr. Knight's race.

73. The effect of these practices deprived Dr. Knight of equal employment opportunities and otherwise adversely affected his employment status because of his race.

74. These unlawful employment practices were intentional.

75. The unlawful employment practices were undertaken with malice or with reckless indifference to Dr. Knight's federally protected rights.

## THIRD CAUSE OF ACTION
### Failure to Train or Supervise under Section 1981

76. The Plaintiff incorporate paragraphs 1 – 62 herein as if fully rewritten.

77. Defendant City of Carmel developed and maintained employment related policies, procedures, customs, and/or practices exhibiting or resulting in deliberate indifference to the protected federal rights of African American employees of Carmel, which proximately caused the violation of Dr. Knight's federal rights.

78. Defendant City of Carmel maintains employment related policies, procedures, customs, and/or practices that tacitly or explicitly authorize discrimination and retaliation against the protected class of African American employees of the City of Carmel, including, but not limited to, the failure to properly train on at least the following: proper supervision, internal investigations, grievances, discipline, and Title VII issues and rights of employees with respect to the same.

79. In light of being a municipal employer, the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to result in the violation of federal rights such as those described herein.

80. Defendant City of Carmel is liable for its failure to train and appropriately supervise the employees its various departments.

81. The inadequate training and supervision provided by Defendant City of Carmel resulted in a conscious or deliberate choice to follow a course of action from amoung various alternatives available to the City of Carmel.

82. If any training was given to employees, concerning supervision, internal investigations, grievances, discipline, and Title VII issues and the rights of employees, Defendant City of Carmel knew or should have known that such training was reckless or grossly negligent and that misconduct in that area was almost inevitable.

83. Defendant City of Carmel had a duty to protect the federal rights of its employees.

84. As a direct and proximate cause and consequence of Defendant City of Carmel's failure to train and supervise, Plaintiff suffered injuries, damages, and losses as set forth herein.

WHEREFORE, the Plaintiff, by counsel, requests the Court enter judgment for the Plaintiff and against said Defendants and award:

    a. Back pay and related compensation;

    b. Compensatory and consequential damages, as allowed;

    c. Emotional distress damages, as allowed;

    d. Punitive damages in an amount sufficient to deter Defendants from again engaging in the conduct described herein;

    e. Litigation costs and expenses; and

    f. All other appropriate relief.

Respectfully submitted,

By      */s/ Terrance Kinnard*                .
Terrance Kinnard, #22224-49
Kinnard & Scott
320 N. Meridian St., Ste. 406
Indianapolis, IN 46204
Telephone: 317-855-6282
Facsimile: 317-588-1519
Email: tkinnard@kinnardlaw.net

## DEMAND FOR JURY TRIAL

Plaintiff, by counsel, hereby demand a trial by jury on all issues so triable.

By      */s/ Terrance Kinnard*                .
Terrance Kinnard, #22224-49